## Commonwealth ex rel. Girnus, Appellant, *v.* Haas.

Argued May 1, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Graham C. Showalter,* for appellant.

*A. Thomas Wilson,* District Attorney, submitted a brief, for appellee.

OPINION BY MR. JUSTICE EAGEN, May 27, 1970:

On December 24, 1969, the appellant, Edward Julius Girnus, was incarcerated as a federal prisoner in the United States Northeastern Penitentiary, a federal enclave, located in Kelly Township, Union County, Pennsylvania, near Lewisburg. On that date, while in the

front office of the penitentiary, Girnus was taken into custody by the sheriff of Union County as a fugitive from justice in the Commonwealth of Virginia. In accordance with the provisions of Section 10 of the Uniform Criminal Extradition Act, 19 P.S. §191.10, Girnus then filed an application for habeas corpus challenging the legality of his arrest. A hearing was held, following which relief was denied, and an order granting extradition issued. This appeal followed.

Girnus first contends that since he was arrested within the confines of a federal penitentiary, he was not "found" within the jurisdiction of Pennsylvania as that term is intended in Section 2 of the Uniform Criminal Extradition Act.[1] This novel position lacks legal merit.

At the relevant time Girnus was physically present in Pennsylvania and subject to its laws. Under the Act of the Pennsylvnia General Assembly of March 26, 1931, P. L. 7, §3, 61 P.S. §355, the Commonwealth of Pennsylvania retained jurisdiction to serve criminal process upon him even while he was on the premises of the penitentiary.

Section 3 of the Act of 1931, supra, provides: "Exclusive jurisdiction over the land so purchased, and to be purchased, is hereby ceded to the United States by the Commonwealth of Pennsylvania, and said lands shall be exempt from the payment of all taxes, state and local: Provided, That the Commonwealth of

---

[1] The Uniform Criminal Extradition Act was adopted in Pennsylvania by the General Assembly by the Act of July 8, 1941, P. L. 288, 19 P.S. §191.1 et seq. Section 2 thereof, 19 P.S. §191.2, provides as follows: "Subject to the provisions of this act, the provisions of the Constitution of the United States controlling, and any and all acts of Congress enacted in pursuance thereof, it is the duty of the Governor of this State to have arrested and delivered up to the executive authority of any other state of the United States any person charged in that state with treason, felony or other crime, who has fled from justice and is found in this State."

Pennsylvania shall retain concurrent jurisdiction with the United States over the lands so acquired by the United States, as far as necessary, for the purpose of serving all civil and criminal processes which may be issued under the authority of the Commonwealth in causes arising without the area so acquired."

It is argued that the "cause" arose within the penitentiary itself (i.e., at the time of the arrest by the sheriff of Union County) and not "without the area" as required by the act. This is erroneous.

Girnus was arrested as a fugitive from justice because of information received by the sheriff of Union County that he had been convicted of several serious crimes in Virginia and was under sentence of imprisonment in that jurisdiction. The "cause" referred to in the Act of 1931, supra, clearly arose in Virginia and not in Pennsylvania.

Girnus next contends that the extradition papers were "not sufficient" to warrant the lower court's order of extradition. With this we agree.

A study of the record discloses that in the hearing below only duplicate copies of the requisition papers, indictments, record of convictions and sentences were introduced in evidence.[2] Moreover, and most importantly, none of these papers were authenticated by any officer of the demanding state. While counsel for Girnus offered no objection to the admission of the duplicate copies of these records into evidence, he did specifically question the legal sufficiency thereof, since any authentication was lacking.

While the information contained in the copies of the records involved was sufficient to obtain extradition, Section 3 of the Act of 1941, supra, 19 P.S. §191.3, specifically requires that such records be authenticated.

---

[2] The only original paper submitted was the warrant of the Governor of Pennsylvania.

Absent such authentication, the papers were insufficient as a matter of law.

While the inquiry permitted by the courts of an asylum state in proceedings contesting extradition is limited, it is the duty of such courts to see that the required papers are in proper order. *Commonwealth ex rel. Banks v. Hendrick,* 430 Pa. 575, 243 A. 2d 438 (1968).

The order of the court below will therefore be vacated, and the record remanded with directions to conduct a further hearing within twenty (20) days, at which time the record may be completed with extradition papers that are in proper order.

It is so ordered.